# NO. 12-16-00104-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|                              |   |                          |
|------------------------------|---|--------------------------|
| *IN THE INTEREST OF A. S.,*  | § | *APPEAL FROM THE 173RD*  |
|                              | § | *JUDICIAL DISTRICT COURT*|
| *A CHILD*                    | § | *HENDERSON COUNTY, TEXAS*|

### *MEMORANDUM OPINION*

S.T. appeals the termination of her parental rights. In four issues, she challenges the trial court's termination order. We affirm.

### BACKGROUND

S.T. is the mother of A.S., born May 23, 2014. On March 13, 2015, the Department of Family and Protective Services (the Department) filed an original petition for protection of A.S, for conservatorship, and for termination of S.T.'s parental rights. The Department was appointed temporary managing conservator of the child, and S.T. was appointed temporary possessory conservator with limited rights and duties.

At the conclusion of the trial on the merits, the jury found, by clear and convincing evidence, that S.T.'s parental rights should be terminated. Thereafter, the trial court found, by clear and convincing evidence, that S.T. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between A.S. and S.T. was in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between A.S. and S.T. be terminated. This appeal followed.

In her first and second issues, S.T. argues that the trial court abused its discretion in failing to grant her motions for extension of the court's jurisdiction.[1]

## Applicable Law

We review a trial court's decision to grant or deny an extension of the dismissal date under an abuse of discretion standard. *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). When the Department files a suit requesting termination of the parent-child relationship, the trial court must dismiss the suit on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator unless the court has commenced the trial on the merits or granted an extension. *See* TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2016). A court may not maintain the suit on the court's docket after the one year dismissal date unless the court finds that extraordinary circumstances necessitate the child's remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 263.401(b) (West Supp. 2016). If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the one year dismissal date. *See* TEX. FAM. CODE ANN. § 263.401(b).

"The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *In re A.J.M.*, 375 S.W.3d at 604. A parent's incarceration is generally considered to be the parent's fault and not an extraordinary circumstance. *See In re K.P.*, No. 02-09-00028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.). Further, when a parent, through her own choices, fails to comply with a service plan and then requests an extension of the statutory dismissal date in order to complete the plan, the trial court does not abuse its discretion by denying the extension. *See id.*

---

[1] In her second issue, S.T. complains that the trial court abused its discretion by failing to grant her motion for continuance. The clerk's record does not contain a motion for continuance, and no motion for continuance is included within her motions for extension. Therefore, we construe this issue as a challenge to the denial of her second motion for extension.

**Analysis**

Initially, we note that S.T. cites no authority to support her contention that the trial court abused its discretion by failing to grant her motions for extension of the court's jurisdiction. Generally, when a brief contains no authority to support a party's argument, the issue is inadequately briefed and, thus, will be overruled. *See **In re O.R.F.***, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied); ***Baker v. Gregg Cnty.***, 33 S.W.3d 72, 79 (Tex. App.—Texarkana 2000, no pet.) (citing TEX. R. APP. P. 38.1(h)). However, we address S.T.'s first and second issues in the interest of justice.

In her first motion, S.T. requested an extension of the court's jurisdiction over this case and to retain the case on the court's docket for an additional 180 days. She stated that "extraordinary circumstances" existed, i.e., that she had been incarcerated "almost since the beginning" of the case and was in a substance abuse felony punishment (SAFP) facility. At the hearing, S.T.'s counsel stated that she was not expected to be released from SAFP until August 12, 2016. The Department noted that an extension of the one year dismissal date would retain the case on the court's docket until September 10, 2016, and that any changes in S.T.'s situation would be minimal in the month after her possible release from SAFP. The CASA volunteer stated that she did not see a reason for the extension, and that A.S. has been doing well in foster care for the past eighteen months. The Department also stated that S.T. had been indicted for the felony offense of endangerment of a child. The trial court denied S.T.'s motion.

In S.T.'s second motion, she requested a second extension of the court's jurisdiction six days before the trial date, stating that "extraordinary circumstances" existed, i.e., the Department had not attempted to locate or serve A.S.'s father. At the hearing, the Department said that S.T. told the court at two different hearings, that two different men could be A.S.'s father. S.T.'s attorney acknowledged that S.T. told her that a third named man was A.S.'s father. The Department noted that it did not "have a clue" about the identity of A.S.'s father. The trial court implicitly overruled S.T.'s second motion for extension by going forward with a jury trial on the original trial date. Further, the trial court granted the Department's motion for separate trials, ordering that the final hearing regarding A.S.'s father's parental rights be heard at a future date.

Based on the record before the trial court, we conclude that S.T.'s incarceration in SAFP was not an "extraordinary circumstance" because her incarceration is considered to be her fault. *See **In re K.P.***, 2009 WL 2462564 at *4. Further, S.T. would have little time to

3

comply with the Department's requirements or service plan after her possible release from SAFP. Nor was the Department's lack of notice to A.S.'s father an "extraordinary" circumstance." The lack of notice and confusion regarding A.S.'s father was solely S.T.'s fault because, on at least three occasions, she identified a different man who could be A.S.'s father. *See id.* Finally, we conclude that continuing in the temporary custody of the Department until S.T. completed SAFP or A.S.'s father was confirmed would not be in the child's best interest. *See In re A.J.M.,* 375 S.W.3d at 604. Accordingly, the trial court did not abuse its discretion by denying S.T.'s first and second motions for an extension of the one year dismissal date. *See id.*

We overrule S.T.'s first and second issues.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. ***Vela v. Marywood***, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); ***In re J.J.***, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. ***Wiley v. Spratlan***, 543 S.W.2d 349, 352 (Tex. 1976); ***In re Shaw***, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); ***In re J.M.T.***, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2016); ***Green v. Tex. Dep't of Protective & Regulatory Servs.***, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); ***In re J.M.T.***, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2016); ***In re J.M.T.***, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; ***Wiley***, 543 S.W.2d at 351; ***In re J.M.T.***, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; ***In re J.J.***, 911

S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 16.001(b)(1)(E)

As part of her third and fourth issues, S.T. contends the evidence is legally and factually insufficient to terminate her parental rights pursuant to Texas Family Code Section 161.001(b)(1)(E).

**Applicable Law**

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2016). The specific danger to the child's well being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.*, 911 S.W.2d at 440. Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

"Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d at 811. Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A parent's repeated engagement in illegal drug activity or repeatedly associating with known criminals after agreeing not to do so in a service plan for reunification with her child may be considered in an analysis of whether clear and convincing proof exists of voluntary, deliberate, and conscious conduct that

endangered the well being of her child. *See In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.).

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d at 739. Evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.). Imprisonment alone does not constitute an endangering course of conduct, but it is a fact properly considered on the endangerment issue. *Id.* (citing *Boyd*, 727 S.W.2d at 533-34). Conduct that routinely subjects children to the probability that they will be left alone because the parent is once again jailed, such as a new offense growing out of a continued use of illegal drugs, endangers both the physical and emotional well being of the children. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

If a parent abuses or neglects the other parent or another child, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct. *In re C.J.F.*, 134 S.W.3d 343, 351 (Tex. App.—Amarillo 2003, pet. denied). Endangering conduct is not limited to actions directed towards the child. *Boyd*, 727 S.W.2d at 533. It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children, including evidence of drug usage. *See id.* (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate).

**The Evidence**

At trial, S.T. stated that she was the mother of A.S., who was twenty-two months old, and of B.T., who was sixteen years old. S.T.'s history with the Department regarding A.S. began on May 27, 2014, four days after A.S. was born. S.T. arrived at the front desk of a local help center and appeared to be lethargic, overwhelmed, and frustrated. She was slurring her words and incoherent. Two days later, the Department was notified that S.T. did not have money to feed

the baby, was rough in handling the baby, and was not bonded with the baby. Denise Kilgore, a Department investigator, interviewed S.T. and noted that she was slurring her words.

S.T. was in a two vehicle accident in Beeville, Texas, that weekend. According to Jarrad Williams, a Texas Department of Public Safety trooper, S.T. failed to control her speed and rear ended a stationary vehicle. Williams stated that the absence of brake or tire marks indicated that S.T. did not attempt to stop before the impact. Moreover, he said, A.S.'s car seat was in the front seat of the vehicle, not the back seat as prescribed by the manufacturer, and that it placed A.S. in danger. The airbags deployed, but A.S. was not injured.

Williams testified that based on S.T.'s speech and body motions, he believed that she was under the influence. She was "mildly" coherent and "somewhat" responsive to his questions. A search of her vehicle revealed empty prescription bottles for Naproxen Sodium and Hydrocodone. Williams said the Hydrocodone prescription had been filled just seven days before the accident. He placed S.T. under arrest, and she voluntarily submitted to drug testing. She tested negative for alcohol, but positive for multiple narcotics, including opiates, THC metabolites, i.e., marijuana, and Hydrocodone. S.T. pleaded guilty in April 2016 to the offense of driving while under the influence with a child passenger under fifteen years of age. Her punishment was assessed at two years of confinement in a state jail facility. However, the court ordered that imposition of her punishment be suspended, that she be placed on community supervision for three years, and that she be ordered to attend SAFP. At the time of trial, S.T. was in SAFP and scheduled to be released in August 2016.

The Department placed A.S. in foster care after the accident. However, S.T. was granted a monitored return of A.S. The Department created a service plan for S.T. including individual counseling, psychological assessment, medication compliance, substance abuse counseling, parenting classes, and maintaining weekly contact with her caseworker. The Department dismissed S.T.'s case in November 2014, leaving A.S. in S.T.'s care.

On March 12, 2015, the Department received information from S.T.'s neighbor that A.S. was in the front yard of her home and covered in dirt. According to the neighbor, S.T. was asleep in the house and in a "comatose" state. The Department's investigator, Holly Farmer, found A.S. covered in dirt and she appeared to have been crawling around outside the house. Farmer said that when someone attempted to rouse S.T., she would sit up, laugh, smile, close her eyes, and go back to sleep. According to S.T., she fed A.S. breakfast, gave her a bottle, and lay

8

on the couch with her. The next thing she remembered was waking up with law enforcement and Farmer in her living room. She believed that B.T.'s boyfriend let A.S. out of the house or took her out because he "miraculously" found the baby outside.

S.T. testified that she was diagnosed with bipolar disorder when she was eighteen. Her other diagnoses included attention deficit disorder, generalized anxiety disorder, and posttraumatic stress disorder. She was currently prescribed Effexor and Tegretol, and had been taking an anxiety medication and Seroquel at the time of the March 2015 incident. S.T. did not believe she abused prescription drugs, took prescription drugs that were not hers, or overdosed on her own prescriptions. Nonetheless, B.T. testified that S.T. sometimes took B.T.'s prescribed mental health medications. S.T. admitted using methamphetamines and marijuana after A.S.'s birth, but she did not believe she was addicted to illegal drugs.

S.T. had an extensive history with the Department that began when B.T. was two years old. All of the allegations involved B.T. and occurred between 2002 and 2015. The allegations against S.T. related to B.T. included

- physical abuse;
- sexual abuse by a man believed to be B.T.'s father;
- neglectful supervision, inappropriate supervision, and emotional abuse;
- physical abuse by an unknown perpetrator, and by a male relative or S.T.'s boyfriend;
- concerns regarding S.T.'s mental health and stability, including taking, and attempting to overdose on, B.T.'s mental health medications;
- inability to meet B.T.'s needs;
- drug use by S.T.;
- suicide ideations by S.T. (stating that she was "ready to tie the rope and be done with it");
- physical altercations between S.T. and B.T.; and
- drug use, attempted overdose, and illegal activity by B.T.

In addition to the driving under the influence conviction following the May 2014 motor vehicle accident, S.T.'s criminal history included convictions for forgery of a financial

9

instrument, failure to identify as a fugitive, and a DWI in 2014 while she was pregnant with A.S. She also testified that she had a pending endangerment of a child charge as a result of the 2015 incident.

**Conclusion**

Viewing the evidence in the light most favorable to the finding, the jury could have determined that S.T. had unresolved mental health issues that affected the safety of her children; suicide ideations; extensive Department history involving neglect, abuse, inadequate supervision, and inappropriate mental health behavior; a criminal history; illegal drug and mental health medication abuse; and a refusal to admit that she was an addict or that she abused prescription medications. The jury also could have found that S.T. endangered A.S. by driving while under the influence of illegal drugs and prescription medications resulting in a motor vehicle accident; by driving with A.S.'s car seat in the front seat of the vehicle; by being comatose in A.S.'s presence, and by physically abusing her other daughter. Therefore, the jury could have concluded that S.T. engaged in conduct that endangered A.S.'s physical or emotional well being. *See In re T.N.*, 180 S.W.3d at 383.

There also was evidence that A.S. was not injured in the two incidents, that S.T.'s monitored return was successful, and that B.T. had unresolved mental health concerns. But this evidence is not so significant that a reasonable fact finder could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that S.T. engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered her physical or emotional well being. Therefore, we hold that the evidence is legally and factually sufficient to support termination of S.T.'s parental rights under Section 161.001(b)(1)(E). Accordingly, we overrule S.T.'s first and second issues regarding Section 161.001(b)(1)(E).[2]

### BEST INTEREST OF THE CHILD

As part of her third and fourth issues, S.T contends the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the best interest of the

---

[2] Because we have concluded that the evidence is legally and factually sufficient to support termination of S.T.'s parental rights under subsection (b)(1)(E), we need not address that part of her third and fourth issues regarding subsection (b)(1)(D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1); TEX. R. APP. P. 47.1.

child. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 801. The *Holley* test focuses on the best interest of the child, not the parent's best interest. *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the *Holley* factors below.

## The Evidence

The evidence discussed above shows that S.T. has a long history of unresolved mental health issues, illegal and prescription drug abuse, and endangering conduct towards both her children. She also has an extensive Department history and criminal history.

There also is testimony about S.T.'s current service plan with the Department. Ana Hurst, a Department conservatorship worker, testified that S.T.'s service plan requested that she participate in any services available at her location and maintain monthly contact with the Department through letters. Hurst stated that S.T. maintained monthly contact. After S.T. was transferred to SAFP in November 2015, she provided the Department with sign-in sheets for parenting classes and education classes such as family systems and family wellness. She also participated in individual and group counseling, and Alcoholics and Narcotics Anonymous.

S.T.'s work history includes employment as a bookkeeper and administrative assistant, and a bank teller. She also has held clerical positions and done construction cleanup, healthcare management, and house cleaning. However, she has not worked since 2012. She receives a monthly disability check in the amount of $800.00, food stamps, and food from the Women's, Infants, and Children (WIC) program. She testified that after she completed SAFP, she could return to a home owned by J.S. She stated that J.S., who at one point was presumed to be A.S.'s

11

father, is currently serving a thirty-five year prison sentence relating to drugs. He allowed her to use his house and did not require her to pay rent or housing insurance. The CASA volunteer stated that S.T. had a good place for A.S. to live and agreed that it was neat, clean, and decorated.

Other testimony relates to the bond between mother and child. S.T. testified that she had two or three visitations with A.S. after the child was placed in foster care in March 2016 and before she was incarcerated in April 2016. S.T. has not seen A.S. since she was placed in custody. However, Hurst stated that S.T. attended only one visitation with A.S. before she was incarcerated, and that A.S. did not seem to want to go to her mother. The CASA volunteer stated that the visit went well and that S.T. and A.S. were bonded.

S.T. testified regarding her future plans for herself and A.S. She expected to be released from SAFP on August 8, 2016. She will then be required to complete an aftercare program that includes intensive outpatient treatment, Alcoholics and Narcotics Anonymous meetings, random and weekly urinalysis, substance abuse counseling, mental health treatment through the Andrews Center, weekly visits with the probation department, and sixty days on an ankle monitor. S.T. admitted that she has a pending felony charge for child endangerment and that she could be punished for up to two years in a state jail facility.

S.T. also admitted that the Department had temporary management of A.S. for four months in 2014, and for eleven to twelve months since March 2015, a total of sixteen of A.S.'s twenty-two months of life. She stated that A.S. could remain in foster care while she was incarcerated and until she could prove that she was fit to take care of her. According to Hurst and the CASA volunteer, A.S. is thriving in her foster care home and called her foster parents "mommy" and "daddy." She is developmentally on target, is very bonded to her foster family, and is healthy, walking, and talking. Hurst did not believe that S.T. had been able to demonstrate the ability or willingness to provide A.S. with a safe and stable environment. The CASA volunteer said that S.T. has a history of substance abuse, and that she has not shown a willingness to seek out, accept, or complete counseling. S.T. did not believe it was in A.S.'s best interest for her parental rights to be terminated because they are a family and "we love her."

## Conclusion

Viewing the above evidence relating to the *Holley* factors in the light most favorable to the finding, we hold that a reasonable fact finder could have formed a firm belief or conviction

that termination of S.T.'s parental rights is in the best interest of A.S. S.T. argues, however, that she has a home and income, that A.S. was not injured as a result of the two incidents, and that she successfully completed a prior service plan. But this evidence is not so significant that a reasonable fact finder could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that termination of S.T.'s parental rights is in the best interest of the child. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of S.T.'s parental rights is in the best interest of the child. Accordingly, we overrule S.T.'s third and fourth issues regarding the best interest of the child.

## DISPOSITION

Having overruled S.T.'s first and second issues, and part of her third and fourth issues, we *affirm* the trial court's order of termination. We need not address the remaining portions of S.T.'s third and fourth issues. TEX. R. APP. P. 47.1.

**GREG NEELEY**
Justice

Opinion delivered September 30, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 30, 2016**

**NO. 12-16-00104-CV**

**IN THE INTEREST OF A. S., A CHILD**

Appeal from the 173rd District Court
of Henderson County, Texas (Tr.Ct.No. FAM15-0183-173)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order of termination **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*